# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER,<br><br>       Plaintiff,<br><br>v.<br><br>ALBERTO BUTALID and<br>LADONNA LONG,<br><br>       Defendants. | Case No. 3:20-CV-961-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Contrell Plummer, an inmate in the Illinois Department of Corrections, filed this lawsuit under 42 U.S.C. § 1983 alleging he received constitutionally deficient medical care for a spider bite and lower abdominal and back pain while imprisoned at Pinckneyville Correctional Center. (Doc. 1). Defendants Dr. Alberto Butalid and LaDonna Long[1] have moved for summary judgment (Doc. 58), and Plummer has responded (Doc. 65). For the following reasons, Defendants' motion is granted.

### FACTUAL BACKGROUND

On July 12, 2018, Plummer had a skin irritation on his right hip. (Doc. 59-3 at pp. 10-11). Plummer scratched a bump, causing it to burst open and blood and fluid to come out. (*Id.* at p. 11). A few days later, a lump appeared in his groin, which caused him pain and made it difficult to walk. (*Id.*). Plummer put in for sick call and was seen by Defendant Long, a licensed practical nurse, on July 16, 2018. (*Id.*). Plummer described the pain to Long as

---

[1] Defendant Long has since married and changed her legal name to LaDonna Estes. For the sake of consistency, the Court refers to Ms. Estes in this Order as Defendant Long.

stabbing, intermittent, and being at a level of 5 to 6 out of 10. (Doc. 59-1 at p. 1). Long noted two small nodules, one on Plummer's hip and one in his pelvic area. (Doc. 59-2 at p. 4). Long gave Plummer acetaminophen 325 mg, 1 to 2 tablets three times a day for three days, and advised him to return if his symptoms worsened. (Doc. 59-1 at p. 2). Long also put Plummer in to see a doctor. (Doc. 59-3 at p. 13; Doc. 65 at p. 92).

Three days later, Dr. Butalid examined Plummer and noted in his chart that Plummer was negative for fever or chills and negative for an insect bite. (Doc. 59-2 at p. 5; Doc. 59-4 at p. 1). Although the medical record from that appointment indicates Plummer did not have an insect bite, Plummer testified that Dr. Butalid said "oh, that's a spider bite" upon physical examination. (Doc. 59-3 at p. 14). Dr. Butalid observed a 1.5 cm lump or knot in Plummer's right hip area with an open area that was moderately tender and an underlying mass that was 5 x 5 cm, sore, and warm. (Doc. 59-2 at p. 5; Doc. 59-4 at p. 2). Plummer also had a 2 x 2 cm mass in his right groin that was sore with lymph node enlargement that was tender. (*Id.*). Plummer testified that Dr. Butalid told him his gland was swollen due to the effects of the spider bite. (Doc. 59-3 at p. 14). Dr. Butalid assessed Plummer as having cellulitis of the right hip with possible abscess. (Doc. 59-2 at p. 5; Doc. 59-4 at p. 2). He ordered Bactrim DS, an antibiotic, and dressing changes for two weeks. (*Id.*). He also ordered Plummer to follow up on July 23, 2018. (*Id.*).

During his appointment with Dr. Butalid, Plummer also complained of pain in his lower abdomen and back, which he had experienced for over 10 years. (Doc. 59-3 at p. 20; Doc. 59-4 at p. 2). Plummer indicated he had irregular bowel movements but had no nausea or vomiting and was negative for melena (dark, tarry feces) and hematochezia (the passage of fresh blood through the anus usually in or with stools). (Doc. 59-4 at p. 2). Dr. Butalid

examined Plummer's stomach and noted it was flat and soft with positive bowel sounds. (*Id.*). Dr. Butalid further noted there was no guarding (tensing) of the abdominal muscles or rebound pain after he pressed on the abdomen. (*Id.*). Plummer did have mild tenderness of the left lower area but no tenderness of the right lower back. (*Id.*). Dr. Butalid suspected irritable bowel syndrome ("IBS") and prescribed Nortriptyline and Fiberlax. (*Id.*). He also recommended that Plummer increase his fluids and eat a high fiber diet. (*Id.*).

This was not the first time Dr. Butalid saw Plummer for abdominal and lower back pain. In March 2018, Plummer complained of abdominal pain that radiated to his back. (*Id.* at p. 3). Dr. Butalid assessed Plummer as having vague abdominal pain and decided to rule out IBS. (*Id.*). He ordered abdominal x-rays and increased Plummer's prescription for Pepcid to 20 mg twice a day for six months. (*Id.*). About a month later, Plummer returned to Dr. Butalid for his asthma and COPD. (*Id.*). At that appointment, Plummer complained that Pepcid and Levsin, another medication used to treat abdominal issues, were not working. (*Id.*). Dr. Butalid noted that Plummer had not been compliant with taking the prescribed medications, and Dr. Butalid discontinued them. (*Id.*). When Plummer again complained of stomach pain on July 8, 2018, Dr. Butalid restarted Plummer's prescription for Pepcid, 20 mg twice a day.

Plummer filed this lawsuit in September 2020 alleging Dr. Butalid and Long were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment to the U.S. Constitution. (Doc. 1). Specifically, Plummer alleges that Dr. Butalid and Long were deliberately indifferent to his spider bite, which he claims was from a brown recluse, and that Dr. Butalid was deliberately indifferent to his back and abdominal pain. (*Id.*).

## LEGAL STANDARD

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and that the movant is entitled to judgment as a matter of law. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. The party opposing summary judgment must offer admissible evidence in support of his version of events; hearsay evidence does not create a genuine issue of material fact. *Durling v. Menard, Inc.*, No. 18 C 4052, 2020 WL 996520, at *2 (N.D. Ill. Mar. 2, 2020) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 484 (7th Cir. 1996)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

### DISCUSSION

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on a claim of deliberate indifference, a plaintiff must show he suffered from an objectively serious medical condition and that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)) (internal quotation marks omitted). It is not necessary for a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to the inmate's health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves intentional or reckless conduct, not mere medical negligence or malpractice. *Pyles v. Fahim*, 771 F.3d 403,

409 (7th Cir. 2014); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

I.   **Deliberate Indifference to Spider Bite**

In his complaint, Plummer alleges that Long and Dr. Butalid were deliberately indifferent when they failed to treat his spider bite as an emergency and did not give him first aid. (Doc. 1).

A.   Objectively Serious Medical Condition

As an initial matter, neither party discusses whether the spider bite was an objectively serious medical condition sufficient to satisfy the first prong of the deliberate indifference analysis. In some situations, an infected skin wound can rise to the level of an objectively serious medical condition. *See Fryer v. Ledvora*, No. 14 C 9199, 2017 WL 36445, at *5 (N.D. Ill. Jan. 4, 2017) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a layperson would recognize that a "purulent draining infection" caused by an infected cyst that was accompanied by extreme pain and high fevers is a sufficiently serious medical condition)). On the other hand, an "uncomfortable skin issue" is not objectively serious if it responds to treatment. *Id.* (citing *Roberts v. Bailey*, No. 13 C 5245, 2015 WL 5332237, at *3 (N.D. Ill. Sept. 14, 2015) (an infected spider bite "similar in appearance to a pimple . . . is not, in and of itself, an objectively serious medical condition," if the plaintiff fails to identify evidence indicating that the infection poses a significant health risk)).

Here, Dr. Butalid noted that Plummer had a 1.5 cm lump with an open area that was moderately tender and an underlying mass that was 5 x 5 cm, sore, and warm. (Doc. 59-2 at p. 5; Doc. 59-4 at p. 2). He also had a 2 x 2 cm mass in his right groin. Plummer testified that when the lump initially burst, it drained blood and pus. There is no evidence, however, that the lump continued to weep or bleed profusely when he saw Long or Dr. Butalid, and

Plummer told Long his pain was a 5 or 6 on a scale of 0 to 10—far less than the "excruciating pain" courts have required to determine a skin infection is a serious medical condition. *See Myrick v. Anglin*, 496 F. App'x 670, 674 (7th Cir. 2012). Thus, the Court doubts whether Plummer's spider bite and accompanying swollen gland rises to the level of a serious medical condition. Nevertheless, because Defendants do not make this argument, the Court presumes for purposes of summary judgment that Plummer meets the first prong of the deliberate indifference analysis.

    B.   <u>Knowing or Reckless Disregard to an Excessive Risk to Plummer's Health</u>

At his deposition, Plummer testified that he thought Long was deliberately indifferent to his spider bite because she did not examine it and did not treat it as an emergency even though it was bleeding, he was in pain, and he couldn't walk properly. (Doc. 59-3 at p. 12). Plummer testified that he did not have full range of motion in his hip due to the spider venom, so he had to walk slightly bent over. (*Id.*). Plummer further testified that he thought Dr. Butalid was deliberately indifferent because he did not administer anti-venom for the brown recluse bite, did not deem it an emergency, and did not administer first aid. (Doc. 59-3 at pp. 18-19). Plummer then had to wait several days to receive the antibiotics and wound dressings that Dr. Butalid ordered. (*Id.* at p. 19).

First, while Plummer disputes on summary judgment that Long physically examined him, his dispute is not genuine. Not only has Plummer failed to support his disputed fact with any citation to the record, *see* FED. R. CIV. P. 56(c), but the medical records, Plummer's own complaint, and his grievance from September 1, 2018, belie his assertion. Long noted in Plummer's file that she observed two nodules on his right side. In his complaint, Plummer states that Long "was shown two (2) lumps." (Doc. 1 at p. 12). And in his grievance,

completed about a month and a half after he saw Long, Plummer stated that he "showed Nurse L. Long two lumps. One on the side of his right hip on the right side. One lump in the crease of his leg (right side). Nurse Long put grievant in for the doctor." Thus, the Court finds it undisputed that Long examined Plummer's spider bite. *See Marvin v. Holcomb*, 72 F.4th 828, 833 (7th Cir. 2023) ("[Plaintiff] cannot create a genuine dispute of material fact by relying on allegations; he must point to admissible evidence in the record.").

Second, there is no evidence that the treatment Dr. Butalid or Long rendered was constitutionally deficient. Long observed Plummer's wound, prescribed him a pain reliever, put him in to see the doctor, and advised him to return if his symptoms worsened. Nothing about Plummer's spider bite warranted Long treating it as a medical emergency. Likewise, Dr. Butalid examined Plummer, found that he was negative for fever or chills, and diagnosed him with cellulitis of the right hip with a possible abscess. Dr. Butalid ordered an antibiotic to address the infection and dressing changes for the open wound. Again, nothing about this treatment demonstrates a disregard to a serious risk to Plummer's health.

Plummer argues that Dr. Butalid should have administered anti-venom for his brown recluse bite. An anti-venom for brown recluse bites simply does not exist.[2] Plummer also complains that he did not see Long or Dr. Butalid in the timeframe required by the IDOC. But "the failure of officials to comply with departmental regulations or even state law does not necessarily violate the Constitution." *Courtney v. Butler*, 66 F.4th 1043, 1052 (7th Cir. 2023) (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)). And there is no evidence that Long or Dr. Butalid had any involvement in scheduling Plummer's appointments.

---

[2] Healthline, "Brown Recluse Spider Bites: What You Should Know," https://www.healthline.com/health/brown-recluse-spider#prevention ("There is no recommended antivenom (medicine that counteracts the poison in the bite, called venom) for brown recluse spiders.") (last visited Sept. 25, 2023).

Finally, while Plummer complains that he did not receive the antibiotics and dressing changes until July 23, 2018, four days after Dr. Butalid prescribed them, there is no evidence that Dr. Butalid had any control over when Plummer would receive his prescriptions.

In sum, even assuming that Plummer was suffering from an objectively serious medical condition, there is no evidence from which a reasonable jury could find that Dr. Butalid or Long were deliberately indifferent. For these reasons, they are entitled to summary judgment on Plummer's claim that they were deliberately indifferent to his spider bite.

## II.  Deliberate Indifference to Lower Abdominal and Back Pain

Plummer also asserts that Dr. Butalid was deliberately indifferent to his lower abdominal and back pain when he resorted to a course of treatment that he knew to be ineffective.

### A.  Objectively Serious Medical Condition

Again, neither party discusses whether Plummer's lower abdominal and back pain constitutes an objectively serious medical condition. Plummer claims to have experienced this pain for more than 10 years, and chronic pain can be an objectively serious medical condition. *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Because Defendants do not argue that Plummer's pain was insufficient to constitute an objectively serious medical condition, the Court again presumes for purposes of summary judgment that the first prong of the deliberate indifference standard is met.

### B.  Knowing or Reckless Disregard to an Excessive Risk to Plummer's Health

Plummer claims Dr. Butalid acted with deliberate indifference to his back and stomach issues when he persisted in an ineffective course of treatment by prescribing the same medication he had previously taken.

It is true that a doctor cannot resort to an "easier and less efficacious treatment" that they know to be ineffective. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016). Even viewing the evidence in a light most favorable to Plummer, however, that is not what happened here.

Plummer admits that between 2015 and the present, he has been prescribed 19 different medications to try to solve his abdominal and back pain. (Doc. 65 at pp. 34-35). Although Dr. Butalid re-prescribed Pepcid at an earlier appointment despite Plummer's complaints that it was not effective, Dr. Butalid had noted that Plummer had been non-compliant in taking his medications. Thus, it was not unreasonable for Dr. Butalid to prescribe Pepcid again. At his appointment on July 19, 2018, Dr. Butalid prescribed Nortriptyline and Fiberlax, which he had not previously prescribed. Plummer also has had multiple x-rays of his abdomen, at least one of which was ordered by Dr. Butalid. (Doc. 59-2 at p. 10). That x-ray showed that Plummer's bowel gas pattern was non-obstructive. (*Id.*). Finally, Plummer admits that Dr. Butalid referred him for a consultation with a gastrointestinal specialist, but that the request was denied in collegial review by Dr. Ritz.

Thus, there is no evidence from which a reasonable jury could find that Dr. Butalid persisted in an easier or ineffective course of treatment without exercising professional judgment. Dr. Butalid physically examined Plummer, attempted to determine the source of his pain by ordering x-rays, referred him for a consultation with a gastrointestinal specialist, and prescribed medication that could potentially help Plummer if taken as directed. In other words, the undisputed facts show that Dr. Butalid exercised his medical judgment in diagnosing and treating Plummer's condition through physical examinations, imaging, medication, and the referral to an outside specialist. That Dr. Butalid's request for a

consultation with a specialist was denied by another doctor on collegial review does not make him personally liable for deliberate indifference. *See, e.g., Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 243 (7th Cir. 2021). Thus, the Court finds that Dr. Butalid is entitled to summary judgment on Plummer's claim of deliberate indifference to his lower abdominal and back pain.

## Conclusion

For these reasons, the Motion for Summary Judgment filed by Defendants Dr. Alberto Butalid and LaDonna Long (Doc. 58) is **GRANTED**. Plaintiff Contrell Plummer shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: September 26, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**